**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 12 2013, 8:51 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY L. SANFORD**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TARRENCE LEE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 71A03-1210-CR-424 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE SAINT JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D01-1208-MR-11

**February 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Tarrence Lee appeals the denial of his motion to set bail, raising for our review the sole question of whether the trial court abused its discretion in denying that motion.[1] Finding no abuse of discretion, we affirm.

Lee and Trina Winston were married in April 2012, and by June of the same year, Winston had filed for divorce and obtained a protective order against Lee after suffering multiple severe beatings at his hands. Winston then moved into the home of Andre Banks. Late on the evening on August 15, 2012, Lee came to Banks's house to speak with Winston. Winston got into Lee's car and the two left together. This was the last time Winston was seen alive.

In the early morning hours of August 18, 2012, Andre O'Neil contacted the police and informed them that he had seen Winston's dead body in Lee's apartment. Specifically, O'Neil indicated that on the evening of August 16, 2012, he had been at a park with Lee, James Johnson III, and Lee's brother, Anthony Lee (Anthony), when Lee told the men that he needed their help with something at his apartment. Upon arriving at Lee's apartment, the men saw Winston's "obviously dead" body wrapped in a blanket on the floor of the apartment's living room. *Appellant's Appendix* at 7. O'Neil indicated that he did not want to

---

[1] The State cross-appeals, arguing that this appeal should be dismissed as moot because Lee has now been convicted following a bench trial. In support of this argument, the State has submitted an Appellee's Appendix containing what appears to be a judgment of conviction. The judgment, however, is file-stamped by the St. Joseph Superior Court on November 21, 2012. The Notice of Completion of Clerk's Record was filed in this appeal nearly a month prior to that date, and there is no indication that the record was ever supplemented or amended. Thus, it is apparent that the materials relied on by the State in support of its argument that this appeal is moot are not part of the record. Because these materials are not properly before us, we will not consider them. *See Haste v. State*, 967 N.E.2d 576 (Ind. Ct. App. 2012). Accordingly, we will address Lee's appeal on the merits.

2

be involved, and then left the apartment. Initially, O'Neil did not know what to do, but he later contacted the police.

Police then interviewed Johnson and Anthony. Johnson and Anthony both stated that they helped Lee carry Winston's body out of the apartment and place it in the trunk of Lee's car. The three then drove to Illinois, where they disposed of Winston's body. Lee stated that he wanted to leave the body in the Chicago area because he believed the death would receive less investigation there. Johnson also told police about a number of incriminating statements Lee made concerning Winston's death. For example, Johnson stated that Lee said that Winston was "a whore," that she had slept with multiple men at one time, and that "she pushed him to the point where he did what he did." *Transcript* at 43, 44. Johnson also stated that Lee had threatened O'Neil, telling him that he could end up like Winston.

On August 20, 2012, the State charged Lee with murder.[2] On August 28, 2012, Lee filed a motion to set bail. A hearing was held on October 1, 2012, at which the State presented the testimony of investigating Officer Anthony Bontrager. Officer Bontrager testified concerning the statements he had taken from O'Neil, Johnson, and Anthony, as well as additional evidence he had gathered. At the conclusion of the hearing, the trial court denied the motion to set bail. Lee now appeals.

Article 1, section 17 of the Indiana Constitution provides that "[o]ffenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong." Ind. Code Ann. § 35-33-8-

---

[2] Ind. Code Ann. § 35-42-1-1 (West, Westlaw current through 2012 2nd Reg. Sess.).

2(a) (West, Westlaw current through 2012 2ⁿᵈ Reg. Sess.) codifies this constitutional guarantee as follows: "Murder is not bailable when the proof is evident or the presumption strong. In all other cases, offenses are bailable." This language has been interpreted as creating a presumption that bail should not be granted in murder cases. *Bei Bei Shuai v. State*, 966 N.E.2d 619 (Ind. Ct. App. 2012), *trans. denied*. The defendant bears the burden of overcoming this presumption by showing that the proof is not evident and the presumption is not strong. *Id.*; I.C. § 35-33-8-2(b). We review a trial court's denial of bail in a murder case only for an abuse of discretion. *Bei Bei Shuai v. State*, 966 N.E.2d 619. Accordingly, we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

On appeal, Lee argues that there was no evidence presented to establish that a murder took place. Specifically, Lee claims that "[t]here is nothing in the affidavit that points to any physical evidence that supports the State's contention that the victim was killed. There is nothing in the affidavit to show how she died or for that matter that her death was caused by the defendant." *Appellant's Brief* at 9. We disagree.

The State presented evidence that Winston left Banks's house with Lee on the night of August 15, 2012 and was thereafter never heard from again. The next evening, Lee solicited the help of O'Neil, Johnson, and Anthony in removing Winston's dead body from his apartment. In the course of disposing of Winston's body, Lee made a number of incriminating statements, saying Winston was "a whore," that she had slept with multiple men, and that "she pushed him to the point where he did what he did." *Transcript* at 43, 44.

Lee also threatened O'Neil by telling him that he could end up like Winston. Additionally, Lee stated that he wanted to dispose of Winston's body in the Chicago area because he believed a "Jane Doe" would not be extensively investigated there. *Id.* at 44. Cell phone records indicated that Lee's cell phone was used in Illinois at approximately 11:30 p.m. on August 16, 2012. The State also presented evidence that Winston had recently filed for divorce, and that Lee had been extremely violent toward her in the past and threatened to kill her on at least one occasion.

Under these facts and circumstances, we cannot say that the trial court abused its discretion in concluding that Lee had not satisfied his burden of showing that the proof was not evident and the presumption of guilt was not strong. Accordingly, the trial court did not abuse its discretion in denying Lee's motion to set bail.

Judgment affirmed.

NAJAM, J., and BRADFORD, J., concur.